# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TRI-STATE HOSPITAL SUPPLY
CORPORATION,

      Plaintiff,

      v.

UNITED STATES OF AMERICA,

      Defendant.

Civil Action No. 00-1463 (HHK/JMF)

## MEMORANDUM OPINION

This case was referred to me by Judge Kennedy for resolution of all non-dispositive

motions.  Currently before me is the issue of whether certain government documents are shielded

from discovery under the attorney-client, work product, deliberative process, and law

enforcement privileges.  After reviewing the documents *in camera*, I have determined that, under

the facts and circumstances of this litigation, most, but not all, of the documents are not in fact

shielded by those privileges.

## I.    BACKGROUND

Tri-State Hospital Supply Corporation ("Tri-State") is a corporation that sells hospital

supplies in the United States.  In the past, Tri-State imported surgical equipment from suppliers

in Pakistan and received rebates on those purchases.  In reporting its receipt of those purchases to

United States Customs Service, now called the United States Customs and Boarder Protection

("Customs"), Tri-State declared the price reflected on the purchase invoices, not the price it paid

after taking into account the rebates.

In the 1990's, Customs investigated Tri-State, criminally and civilly, for allegedly falsifying forms submitted to Customs. As a result, Customs issued civil penalty notices against Tri-State and referred the matter to the Department of Justice ("DOJ") for collection of those penalties. In 1996, DOJ brought a collection suit against Tri-State in the United States Court of International Trade, alleging fraud, negligence, and gross negligence. The fraud count was dropped by DOJ during trial; the gross negligence count was dismissed pursuant to Tri-State's motion for judgment as a matter of law; and the ordinary negligence count went to the jury, which returned a verdict in Tri-State's favor. Subsequently, Tri-State filed the present civil action against the government, alleging abuse of process and malicious prosecution.

On August 31, 2004, Tri-State filed a <u>Motion to Compel Responses to Plaintiff's First Set of Interrogatories, First Request for Production of Documents, Second Request for Production of Documents, and Second Request for Admissions</u> ("Pl.'s Mot. to Compel"), seeking, among other things, the production of documents for which the government had asserted the attorney-client, work product, deliberative process, and law enforcement privileges. Upon consideration of Tri-State's motion and the related filings, the court granted the motion in part and denied the motion in part, ordering the government to submit the documents it claimed to be privileged for *in camera* review. <u>Tri-State Hosp. Supply Corp. v. United States</u>, 226 F.R.D. 118, 133-40 (D.D.C. 2005). In response to the court's order, the government submitted two sets of documents with corresponding privilege logs: twenty-three documents from Customs and 224 documents from DOJ.

**II.      DISCUSSION**

The government has asserted four different privileges:  the attorney-client, work product, deliberative process, and law enforcement privileges.  Before beginning, it may be helpful to conceptualize this court's analysis as a series of privilege specific "filters" through which the documents must pass in order to be shielded from discovery.  These filters are based on the fundamental principles guiding the privileges and on the specific arguments presented by the parties.

The documents that the government claims are protected by the attorney-client privilege must first pass through two filters.  First, the documents must in fact be attorney-client privileged.  Specifically, in order to be shielded from production, the documents must reflect confidential communications from a client to an attorney made for the purpose of seeking legal advice or services.  The documents that do not survive this first filter must be produced unless they are protected by another specific privilege claimed by the government.  The documents that survive the filter must also survive the "crime-fraud" filter.  They cannot be shielded from production if they reveal a communication that was made in furtherance of a crime, fraud, or other misconduct.  Because the attorney-client privilege is absolute, any document that survives both of these filters is protected from discovery regardless of the applicability of any other privilege.

Moving on to the work product privilege.  First, the document must in fact be work product.  If the document is work product, then it must pass through a second filter, which I will call "Tri-State's need" filter.  If Tri-State's need for the document is great enough, then the document must be surrendered.  The documents that survive this filter - the ones for which Tri-State does not have a great enough need - must survive a third filter, the "crime-fraud" filter.

Work product cannot be shielded from discovery if it was created in furtherance of a crime, fraud, or other misconduct.

That leaves two privileges: the deliberative process privilege and law enforcement privilege. With regard to the deliberative process privilege, the court finds that, because Tri-State's claims place the government's deliberative process squarely in issue, the privilege is inapplicable. With regard to the law enforcement privilege, the court finds that, with a few exceptions, Tri-State's need for the documents outweighs the public's interest in nondisclosure of the information.

### A.  Attorney-Client Privilege

The government withheld both Customs and DOJ documents from production under the attorney-client privilege. In moving to compel, Tri-State argues that the attorney-client privilege is inapplicable because "communications made or work performed in the furtherance of the government's malicious prosecution and abuse of process are not protected by the attorney-client privilege." Pl.'s Mot. to Compel at 20. In support of this argument, Tri-State relies on what is commonly referred to as the crime-fraud exception to the attorney-client privilege. See Pl.'s Mot to Compel at 20-21. Before addressing the crime-fraud exception, the court must determine whether the documents are in fact attorney-client privileged.

The attorney-client privilege protects certain communications between a client and his attorney in order to encourage clients to be as candid as possible with their attorneys and thereby secure the best possible advice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). In determining whether a document is attorney-client privileged, the relevant inquiry is whether the communication contained therein was made by a client to its attorney for the purpose of seeking

legal advice or services, whether the client had a reasonable belief that the communication was confidential, and whether the disclosure of the communication would tend to reveal the confidential information. Evans v. Atwood, 177 F.R.D. 1, 3 (D.D.C. 1997).

This circuit defines the attorney-client privilege narrowly, protecting only the disclosure of communications made *by* the client *to* the attorney for the purpose of seeking legal advice or services. Evans, 177 F.R.D. at 3 (citing Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 617 (D.C. Cir. 1997)). Communications *from* the attorney *to* the client are protected only insofar as the attorney's communication discloses an attorney-client privileged communication *from* the client. Evans, 177 F.R.D. at 3 (citing Brinton v. Dep't of State, 636 F.2d 600, 603-04 (D.C. Cir. 1980)).

1.   *Customs Documents*

The government asserts the attorney-client privilege for documents relating to Customs' issuance of a civil penalty notice to Tri-State, its consideration of Tri-State's petition for relief from that penalty, its referral of the matter to DOJ for collection, and its attempted referral to the United States Attorney's Office for prosecution. After reviewing the Customs documents, the court finds that most are not attorney-client privileged because they do not reveal communications made pursuant to an attorney-client relationship.

The attorney-client privilege only applies to communications that are the product of an attorney-client relationship and maintained as confidential between the attorney and the client. Brinton, 636 F.2d at 603. The mere fact that the person whose opinion or advice is sought is an attorney does not create a privileged communication.

The Customs documents at issue consist of correspondence among government

employees, primarily attorneys, located in different government offices, including various

Customs offices, the United States Attorney's Office for the Eastern District of Virginia, and the

Civil Division of DOJ.  To determine whether the correspondence was made as part of an

attorney-client relationship, it is necessary to step back and look at the expectations of the parties

to the communication.  In doing so, a distinction must be drawn between correspondence in which

the government employee or lawyer is seeking legal guidance or services for his own needs or on

behalf of the agency and, on the other hand, correspondence in which two or more lawyers are

discussing how to best represent a mutual client or interest.  The court's review of the Customs

documents reveals that many of them fall within the latter category, specifically, that of parties

working together to decide how best to handle Customs' civil penalty against Tri-State.  While the

attorneys to these communications may have reasonably expected the communications to be

protected from disclosure under the work product doctrine, discussed later in this opinion, they

could not have reasonably expected them to be attorney-client privileged.

There are three Customs documents, however, that the court finds to be attorney-client

privileged.  All three of these documents are letters referring the Tri-State matter to another

government office for further enforcement.  The first document is a letter from Customs' Fines,

Penalties, and Forfeitures Section to Customs' Office of the Chief Counsel referring the matter for

collection. Privilege Log for Documents Produced by Customs, Doc. No. 8.  Similarly, the second

document is a letter from Customs' Office of the Chief Counsel to DOJ referring the matter for

collection. Id. at Doc. No. 15.  The third document is a letter from Customs to the United States

Attorney's Office for the Eastern District of Virginia seeking criminal prosecution against Tri-

State. Id. at Doc. No. 13.  Under the circumstances of each of these letters, the author is seeking

legal services on behalf of his agency and, in essence, seeking to become a client of the recipient. In addition, these letters contain confidential communications, which appear to have been made for the purpose of securing the legal services (*i.e.,* summaries of the Tri-State matter and the reasons for the requested further legal action). Accordingly, the court finds that these three documents are attorney-client privileged.

### 2.    *Department of Justice Documents*

DOJ asserts the attorney-client privilege for documents relating to the referral of the Tri-State matter to DOJ for collection and DOJ's preparation of that lawsuit. These documents fall into two relevant categories: (1) documents from Customs to DOJ, and (2) documents from DOJ to Customs.

The documents from Customs to DOJ consist of correspondence relating to a variety of litigation issues, such as background facts, key documents, discovery responses, drafts of litigation documents, and legal research and analysis. After reviewing these documents *in camera*, the court finds that, with a few exceptions, they are in fact attorney-client privileged. There is no doubt that the relationship between DOJ and Customs is that of attorney and client and that the documents reveal confidential communications made for the purpose of obtaining legal services, specifically, a collection suit against Tri-State.

There are four documents from Customs to DOJ, however, that are not attorney-client privileged. Specifically, G00-P04-501 and G10-P03-480 are merely innocuous transmittal cover sheets that do not relay any substantive client communication. The other two documents, G03-P03-001 and G03-P03-043, contain client communications that were not intended to remain confidential, but rather, were intended to be disclosed.

7

The court further notes that many of the documents from Customs are letters or facsimiles forwarding documents to DOJ.  While the fact of the transmittal might be an attorney-client privileged communication, that does not in itself shield from discovery the documents forwarded with that letter or facsimile.  The forwarded documents are only privileged if they would have been privileged in the hands of the client.  As the Supreme Court has explained:

> [The attorney-client privilege] protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.  This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice.

Fisher v. United States, 425 U.S. 391, 403-04 (1976).  Accordingly, to the extent the Customs documents forwarded to DOJ are independently responsive to Tri-State's requests and not otherwise privileged, they must be produced, unless the government has already done so.

The application of the privilege to correspondence from DOJ to Customs is not as straight forward.  As discussed above, communications from an attorney to his or her client are not automatically attorney-client privileged.  In order to be privileged, DOJ's communication to Customs must tend to reveal a prior confidential communication from Customs.  Very few of these documents actually reveal such confidential communications.  To the contrary, the documents are primarily updates from DOJ regarding the progress of the litigation and litigation related requests for information or explanations that do not reveal confidential client communications.  The court finds that only those few documents from DOJ that reveal confidential communications from Customs are in fact attorney-client privileged.

8

There are two DOJ documents that do not fall into the two broad categories just discussed, *i.e.*, they are not communications between DOJ and Customs. The first document, G00-P03-073, is an e-mail from Custom's Office of the Chief Counsel to another Customs attorney seeking assistance responding to Tri-State's discovery requests. Like the correspondence from DOJ to Customs just discussed, this e-mail is an attorney communication that does not reveal a prior confidential communication from a client. Accordingly, the e-mail is not attorney-client privileged. The second document, G00-P04-502, is a letter from the United States Attorney's Office for the Eastern District of Virginia. Because there was no attorney client relationship, nor was the author seeking to become a client, at the time the letter was written, this letter is not attorney-client privileged.

Due to the large number of DOJ documents for which the government claims the attorney-client privilege, the court's document-by-document determination of which DOJ documents are in fact attorney-client privileged is provided in a separate appendix to this memorandum opinion.

### 3. The Crime-Fraud Exception

Having found that some of the government's documents are attorney-client privileged, the court must now determine whether the crime-fraud exception applies to those documents. Although the attorney-client privilege is usually absolute, the privilege cannot be used to shield communications made for the purpose of committing a crime or fraud. This exception, known as the crime-fraud exception, applies when the following two conditions are satisfied:  (1) the client made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act, and (2) the client has carried out the crime or fraud. In re Sealed Case, 107 F.3d 46, 49 (D.C. Cir. 1997) (citations omitted). "To invoke the 'crime-fraud' exception to the privilege . .

. more is necessary than mere allegations of wrongdoing or simply naming the attorney as a defendant in the litigation." Coleman v. Am. Broad. Companies, Inc., 106 F.R.D. 201, 207 (D.D.C. 1985).  "To drive the privilege away, there must be 'something to give colour to the charge;' there must be '*prima facie* evidence that it has some foundation in fact.'" Id. at 207 (quoting Clark v. United States, 289 U.S. 1, 15 (1933)).  This burden does not have to be established entirely with independent evidence – the documents themselves are commonly the best evidence available. United States v. Zolin, 491 U.S. 554, 565-70 (1989).

In limited situations, courts have expanded the crime-fraud exception to include communications made in furtherance of an intentional tort or other misconduct. See, e.g., In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985) (characterizing the exception as applying to "crime, fraud or other misconduct"); Diamond v. Stratton, 95 F.R.D. 503, 505 (S.D.N.Y. 1982) (expanded the crime-fraud exception to communications in furtherance of the intentional infliction of emotional distress).  Tri-State is not arguing that the government committed a crime or fraud, but rather that the communications were made in furtherance of its abuse of the civil litigation process and malicious prosecution.

After reviewing the documents *in camera*, the court finds that they do not establish a *prima facie* showing of communications made in furtherance of an abuse of process or malicious prosecution.  To the contrary, the documents tend to reflect that the government believed it had a sufficient factual and legal basis for its actions against Tri-State.  Although there may be appropriate cases in which to extend the crime-fraud exception to communications in furtherance of the abuse of process or malicious prosecution, this is not the case in which to do so.  Because the documents, together with Tri-State's proffered extrinsic evidence, do not establish the required

10

*prima facie* showing, the documents that the court found to be attorney-client privileged do not

lose their privileged status.  Furthermore, because the attorney-client privilege is absolute, there is

no need to consider the application of any other privilege to these documents.

### B.      Work Product Doctrine

The government also withheld Customs and DOJ documents from production under the

work product doctrine.  Tri-State argues that work product protection is unavailable to the

government under the crime-fraud exception. Pl.'s Mot. to Compel at 20-21.  As a threshold

matter, the court finds that many of these documents are not in fact shielded from discovery under

the work product doctrine.

The work product doctrine is designed to balance the need of the adversary system to

promote an attorney's preparation against society's general interest in revealing all facts relevant

to the resolution of a dispute. In re Sealed Case, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing In re

Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984)).  In furtherance of this principle,

Rule 26 of the Federal Rules of Civil Procedure protects from disclosure materials prepared by or

for a party, its attorney, or its representative in anticipation of litigation and allows for discovery

only upon a showing of substantial need and an inability to obtain the substantial equivalent

without undue hardship. Fed. R. Civ. P. 26(b)(3).  In ordering the disclosure of work product, the

court must protect against the disclosure of an attorney's mental impressions, conclusions,

opinions, or legal theories. Id.  Such material, known as opinion work product, is "entitled to

special protection and require[s] a stronger showing of necessity to justify release . . . although the

precise contours of this showing have not been resolved." Byers v. Burleson, 100 F.R.D. 436, 439

(D.D.C. 1983) (citing Upjohn, 449 U.S. at 400-01). See also In re Sealed Case, 856 F.2d at 273;

11

Willingham v. Ashcroft, 228 F.R.D. 1, 5 (D.D.C. 2005).

1.      *Customs and Department of Justice Documents*

As a threshold matter, the documents for which the government asserts the work product privilege are in fact work product.  Critical to the court's determination of Tri-State's need for the work product documents is the nature of Tri-State's claims.  At the heart and soul of Tri-State's claims is the government's motivation and legal and factual basis for pursuing criminal prosecution, issuing civil penalties, and referring the case to DOJ for collection of those penalties. The Customs documents for which the government asserts work product protection relate to the legal and factual basis for Customs' issuance of the civil penalty notice and denial of Tri-State's petition for relief from the same.  Similarly, many DOJ documents provide detailed information about the factual and legal basis for the civil penalty notice and the collection action Tri-State. Although these documents are in large part opinion work product, which is given stringent protection, such opinion work product may be discoverable when it goes to the heart of the issues in the litigation. See Sec. and Exch. Comm'n v. Nat'l Student Mktg. Corp., 1974 WL 415, at *3-*4 (D.D.C. 1974) (when counsel's activities are at issue in an action, there is cause for production of documents that deal with such activities though they are opinion work product) (citation omitted); Central Nat'l Ins. Co. v. Med. Protective Co., 107 F.R.D. 393, 395 (E.D. Mo. 1985) (plaintiff was entitled to discovery of opinion work protect where the work product was at the heart of plaintiff's claim against defendant for bad faith failure to settle a claim).  Because these document reveal information that is central to Tri-State's allegations, the court finds that Tri-State has a sufficient need to review them, both the ordinary work product and opinion work product. The court also finds that no substitute exists for this contemporaneous evidence of the

12

government's decision making.

Tri-State does not, however, have a sufficient need for *all* of the government's work product documents.  Many of the DOJ documents provide no insight into the government's motivation or intent in taking action against Tri-State.  Accordingly, for those documents, Tri-State does not have a sufficient enough need to overcome work product protection.

Due to the large number of DOJ documents for which the government asserts the work product privilege, the court's document-by-document determination of Tri-State's need is provided in a separate appendix to this memorandum opinion.  Because Tri-State has sufficient need for all of the Customs work product documents, a document-by-document determination is not necessary for those documents.

*2.      Crime-Fraud Exception*

It is not necessary to determine whether the crime-fraud exception applies to the work product documents ordered produced based on Tri-State's need.  However, with regard to the remaining work product documents, it is necessary for the court to determine whether the exception requires their production.  Work product protection can be overcome by a showing that the client used the attorney to further a crime or fraud. In re Sealed Case, 107 F.3d 46, 51 (D.C. Cir. 1997) (citing In re Sealed Case, 676 F.2d 793, 811-12 (D.C. Cir. 1982)).  Unlike the attorney-client privilege, the focus is on the client's general intent in consulting with the lawyer or in using the materials the lawyer prepared, not on the client's intent with regard to an individual communication. In re Sealed Case, 107 F.3d at 51.  In determining whether the exception applies, courts make a two step inquiry: "First, there must be a prima facie showing of a violation sufficiently serious to defeat the work product privilege.  Second, the court must find some valid

13

relationship between the work product [at issue] and the prima facie violation." <u>In re Sealed Case</u>, 676 F.2d at 814-15.  The relevant question is: "Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?" <u>In re Sealed Case</u>, 107 F.3d at 51.  The crime-fraud exception to the work product privilege is not limited to criminal or fraudulent conduct, but may also encompass other "misconduct fundamentally inconsistent with the basic premises of the adversary system." <u>In re Sealed Case</u>, 676 F.2d at 812.

Applying the above principles, the court finds that the remaining work product documents do not indicate that the government consulted with counsel for the purpose of committing a crime, fraud, or other misconduct and, therefore, those documents do not have to be produced under the crime-fraud exception.  The court notes that this holding is largely gratuitous because, if its review of the documents had supported the conclusion that the legal services were used in furtherance of a crime, fraud, or other misconduct, the court would also have found that Tri-State had a sufficient need for those documents to overcome work product protection.

### C.      Deliberative Process Privilege

The government withheld certain Customs documents from production under a claim of the deliberative process privilege.  In moving to compel the production of these documents, Tri-State argues that the deliberative process privilege is not applicable because there is reason to believe government misconduct occurred and because Tri-State's claims make the nature of the government's deliberations *the* issue in the case. Pl.'s Mot. to Compel at 16-17.  In response, the government argues that Tri-State has not made the requisite evidentiary showing of government misconduct. <u>Defendant's Opposition to that Portion of Plaintiff's Motion to Compel Written Discovery Responses that Challenges Defendant's Responses to Plaintiff's Discovery Requests as</u>

to Which Defendant Included Governmental Privilege as a Basis for Objection ("Def.'s Opp'n")

at 15-16.

The deliberative process privilege protects from disclosure documents that reveal the

government's pre-decisional, deliberative communications. Tri-State, 226 F.R.D. at 134 (citations

omitted).  The privilege serves many purposes:

> [T]o assure that subordinates within an agency will feel free to
> provide the decisionmaker with their uninhibited opinions and
> recommendations without fear of later being subject to public
> ridicule or criticism; to protect against premature disclosure of
> proposed policies before they have been finally formulated or
> adopted; and to protect against confusing the issues and misleading
> the public by dissemination of documents suggesting reasons and
> rationales for a course of action which were not in fact the ultimate
> reasons for the agency's action.

Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  "The privilege

was fashioned in cases where the decisionmaking process is collateral to the plaintiff's suit." In re

Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency, 145 F.3d 1422,

1425 (D.C. Cir. 1998) (citations omitted).  When "Congress creates a cause of action that

deliberatively exposes government decision making to the light, the privilege's raison d'être

evaporates." Id. at 1424.

The government's reliance on In re Subpoena Duces Tecum, cited above, in asserting that

an "evidentiary showing" of government misconduct must be established in order to overcome the

deliberative process privilege is in error. Def.'s Opp'n at 15.  To the contrary, as that same case

explains, where the government's intent is squarely at issue, there is no need for the court to

engage in the tests applied in deliberative process privilege cases because "the privilege does not

come into the picture." In re Subpoena Duces Tecum, 145 F.3d at 1425.

15

Tri-State's claims place the government's intent squarely at issue.  Tri-State filed suit against the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) *et seq.*, alleging abuse of process and malicious prosecution.  The Federal Tort Claims Act expressly authorizes actions for abuse of process and malicious prosecution against the government. 28 U.S.C. § 2680(h).  Tri-State alleges that the government "recommend[ed] criminal prosecution of the company, demand[ed] that its officers plead guilty to criminal customs fraud, issu[ed] knowingly false pre-penalty and penalty notices, and referr[ed] the matter to the Department of Justice to collect a penalty to which Customs knew it was not entitled." Pl.'s Mot. to Compel at 17.  Abuse of process is the use of the legal system "to accomplish some end which is without the regular purview of the process, or which compels the party against who it is used to do some collateral thing which he could not legally and regularly be required to do." Scott v. District of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1996).  "Malicious prosecution requires: 1) the initiation or procurement of criminal proceedings; 2) without probably cause; 3) primarily for a purpose other than bringing an offender to justice; and 4) termination of the proceedings in favor of the accused." Davis v. Giles, 769 F.2d 813, 814-15 (D.C. Cir. 1985).  The government's intent and decision making process are unquestionably at the heart of Tri-State's allegations and these two causes of action.  Thus, the deliberative process privilege does not even enter into the picture and the documents are discoverable, provided they are not shielded from discovery by another privilege.

### D.    Law Enforcement Investigatory Privilege

The government also withheld documents from production under the law enforcement investigatory privilege.  In moving to compel, Tri-State argues that the government's interest in

nondisclosure is outweighed by Tri-State's need for the information. Pl.'s Mot. to Compel at 27.

The law enforcement investigatory privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement" and to "preserve the integrity of law enforcement techniques." Tuite v. Henry, 181 F.R.D. 175, 176 (D.D.C. 1998).  The law enforcement privilege, however, is qualified. In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988).  In determining whether the privilege will shield a document from discovery, "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." Id.  The following factors, although not exhaustive, are useful in making this determination: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case. Tuite, 181 F.R.D. at 177 (citing Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).  Although listed last, the importance of the information sought to plaintiff's case is the most crucial and important factor. Tuite, 181 F.R.D. at 183.

1.      *Customs Documents*

The government claimed the law enforcement investigatory privilege for Customs Special Agent training materials and chapters from the Special Agent Handbook.  After reviewing these documents *in camera* and considering the factors discussed above, the court finds that Tri-State's need for these materials does not outweigh the public's interest in the effective functioning of law enforcement.

Most significantly, Tri-State's need for the documents is disproportionate to the public's interest in keeping the information confidential.  The training materials and handbook excerpts provide no information about the government's specific investigation of Tri-State.  To the contrary, the documents merely provide information about Customs' general handling of investigations, use of law enforcement techniques, and preparation of cases for prosecution. What little of the documents might be relevant to Tri-State's case would not establish abuse of process or malicious prosecution in and of itself, however, the disclosure of such information would create a tremendous risk that other government investigations would be jeopardized. Specifically, disclosure of these materials would make public extensive information about Customs' enforcement techniques, enabling potential witnesses and targets to anticipate and circumvent agency investigation and avoid detection.  Furthermore, because these techniques are similar to those used by other agencies, disclosure could not only compromise Customs' mission, but those of other agencies as well.  Accordingly, the court will sustain the government's assertion of the law enforcement privilege for the Customs documents.

2.      *Department of Justice Documents*

The government claims the law enforcement investigatory privilege for DOJ documents

relating to Customs' investigation of Tri-State.  It appears that these documents were provided to

or gathered by DOJ in preparation of its collection suit against Tri-State.  These documents

include Reports of Investigations, Significant Activity Reports, handwritten notes of witness

interviews, and facsimiles discussing key documents.  After reviewing these documents *in camera*

and considering the factors discussed above, the court finds that, with a few exceptions, Tri-

State's need for the documents outweighs the public's interest in nondisclosure.

Most significantly, these documents are highly relevant to Tri-State's claims.  The

documents spell out in detail what information was available to Customs and the sources of that

information.  In light of the nature of Tri-State's claims, in particular its claims that the

government's actions were meritless and that the government knew its actions were meritless, this

information is critical.  Furthermore, the substantial equivalent of the information could not be

obtained from other sources or through other discovery.  The documents recreate Customs'

investigation and reveal the reasons behind each step of that investigation and the corresponding

enforcement actions.  There is no substitute for the written, contemporaneous evidence of how

and why Customs investigated Tri-State and of how and why that investigation led to the

recommendation of criminal prosecution, the issuance of civil penalties, and referral for

collection.

On the other hand, there is little indication that the disclosure of these documents would

tend to defeat effective law enforcement.  First, the disclosure of the DOJ documents would not

jeopardize an ongoing investigation.  Customs' investigation into Tri-State's importation of

surgical equipment and its corresponding investigations into related targets appear to be complete.

The United States Attorney's Office decided to not prosecute Tri-State, the collection suit was

dismissed on its merits, and criminal convictions were obtained against other investigation targets. In addition, the investigation reflected in the documents took place approximately ten years ago and does not appear likely to result in additional civil or criminal actions in the future.

Second, the court finds no reason why disclosure would discourage citizens from giving information to the government or adversely impact the persons who in fact provided information. With one exception, the persons interviewed appear to have done so openly and either voluntarily or in response to subpoenas. There are a few documents, however, that reveal the identity of an individual whose cooperation appears to have been intended to remain anonymous, specifically, documents bates numbered G00-P03-159 through G00-P03-162 and G01-P03-159 through G01-P03-162. Because those documents reveal the identity of a confidential witness, the court will shield them from production under the law enforcement privilege.

On a related note, some of the documents disclose matters that occurred before a grand jury, specifically, the identity of subpoenaed witnesses. Rule 6 of the Federal Rules of Criminal Procedure provides that matters occurring before a grand jury are to be secret. Fed. R. Crim. P. 6(e)(2). "Encompassed within the rule of secrecy are 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1382 (D.C. Cir. 1980). See also In re Motions of Dow Jones & Co., Inc., 142 F.3d 496, 499-500 (D.C. Cir. 1998); Fed. R. Crim. P. 6(e)(6). A few of the DOJ documents discuss grand jury subpoenas, which necessarily disclose the identity of the witness subpoenaed. Accordingly, the court will not require production of documents bates numbered G00-P04-513 through G00-P04-514, and G01-P03-200 through G01-P03-205 and the reference to a grand jury subpoena in documents bates numbered

G00-P03-188 and G01-P03-184 must be redacted prior to production.

With the exception of the documents specifically addressed above, the government must produce to Tri-State the documents previously withheld under its assertion of the law enforcement privilege.

## III.    CONCLUSION

For the foregoing reasons, the court will further grant in part and deny in part Tri-State's motion to compel.  The government shall produce the required documents within ten days of this memorandum opinion and in accordance with the same.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: